CILENTI & COOPER, PLLC
Justin Cilenti (GC2321)
Peter H. Cooper (PHC4714)
60 East 42nd Street – 40th Floor
New York, NY 10165
T. (212) 209-3933
F. (212) 209-7102
info@jcpclaw.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AMADA SPROCK, on behalf of herself and others similarly situated,

Plaintiff,

-against-

CATIC FINANCIAL, INC., CONNECTICUT ATTORNEYS TITLE INSURANCE COMPANY, CATIC TITLE INSURANCE COMPANY, JAMES CZAPIGA, CINDY NETSKA, JESENIA PAGAN, and JAMES SEGRETO,

Defendants.

---

Case No. 26-CV-10157

FLSA COLLECTIVE ACTION COMPLAINT

**Jury Trial Demanded**

Plaintiff, AMADA SPROCK ("Plaintiff"), on behalf of herself and other similarly situated employees, by and through her undersigned attorneys, Cilenti & Cooper, PLLC, files this Complaint against defendants CATIC FINANCIAL, INC. ("CATIC FINANCIAL"), CONNECTICUT ATTORNEYS TITLE INSURANCE COMPANY ("CATIC"), CATIC TITLE INSURANCE COMPANY ("CATIC TITLE") (collectively, the "Corporate Defendants"), JAMES CZAPIGA, CINDY NETSKA, JESENIA PAGAN, and JAMES SEGRETO (collectively, the " Individual Defendants") (the Corporate Defendants and the Individual Defendants are collectively referred to herein as the "Defendants"), and states as follows:

## INTRODUCTION

1. Plaintiff alleges that, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), she is entitled to recover from Defendants: (a) unpaid overtime compensation, (b) liquidated damages, (c) prejudgment and post-judgment interest, and (d) attorneys' fees and costs.

2. Plaintiff further alleges that, pursuant to the New York State Labor Law, she is entitled to recover from Defendants: (a) unpaid overtime compensation, (b) liquidated and statutory damages pursuant to the New York Labor Law and the New York State Wage Theft Prevention Act, (c) prejudgment and post-judgment interest, and (d) attorneys' fees and costs.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391 because the conduct making up the basis of the complaint took place in this judicial district.

## PARTIES

5. Plaintiff is a resident of Westchester County, New York.

6. Defendant, CATIC FINANCIAL, INC., is a foreign business corporation organized under the laws of the State of Connecticut, with a principal place of business located at 101 Corporate Place, Rocky Hill, Connecticut 06067.

7. Defendant, CATIC FINANCIAL, INC., is authorized to and does do business within the State of New York.

8. Defendant, CONNECTICUT ATTORNEYS TITLE INSURANCE COMPANY, is a foreign business corporation organized under the laws of the State of Connecticut, with a principal place of business located at 101 Corporate Place, Rocky Hill, Connecticut 06067.

9. Defendant, CONNECTICUT ATTORNEYS TITLE INSURANCE COMPANY, is authorized to and does do business within the State of New York.

10. Defendant, CATIC TITLE INSURANCE COMPANY, is a foreign business corporation organized under the laws of the State of Connecticut, with a principal place of business located at 660 White Plains Road, Suite 570, Tarrytown, New York 10591.

11. Defendant, CATIC TITLE INSURANCE COMPANY is authorized to and does do business within the State of New York.

12. Defendant, CATIC FINANCIAL, is the parent/holding company of Defendants CATIC and CATIC TITLE and, thus, owns both CATIC and CATIC TITLE.

13. Defendant, JAMES CZAPIGA, is the President and Chief Executive Officer of CATIC FINANCIAL.

14. Defendant, CATIC, is the lead operating subsidiary of CATIC FINANCIAL providing title insurance and real estate services across New England and expanded regions.

15. Defendant, CINDY NETSKA, is the Vice President of Human Resources for Defendant CATIC.

16. Defendant, JESENIA PAGAN, is the Human Resources Director for Defendant CATIC.

17. Defendant, CATIC TITLE, is a sister company of CATIC and a subsidiary of CATIC FINANCIAL, which is licensed to issue title insurance policies in New Jersey, New York, and Pennsylvania.

18. Defendant, JAMES SEGRETO, is the Vice President, State Manager of CATIC TITLE, and has been one of Plaintiff's direct supervisors during the relevant period in dispute.

19. At least within each of the three (3) most recent years relevant to the allegations herein, defendant CATIC FINANCIAL was, and continues to be, an "enterprise engaged in commerce" within the meaning of the FLSA in that it (i) has and has had employees engaged in commerce or in the production of goods for commerce, or that handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce, and (ii) has and has had an annual gross volume of sales of not less than $500,000.

20. At least within each of the three (3) most recent years relevant to the allegations herein, defendant CATIC was, and continues to be, an "enterprise engaged in commerce" within the meaning of the FLSA in that it (i) has and has had employees engaged in commerce or in the production of goods for commerce, or that handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce, and (ii) has and has had an annual gross volume of sales of not less than $500,000.

21. At least within each of the three (3) most recent years relevant to the allegations herein, defendant CATIC TITLE was, and continues to be, an "enterprise engaged in commerce" within the meaning of the FLSA in that it (i) has and has had employees engaged in commerce or in the production of goods for commerce, or that handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce, and (ii) has and has had an annual gross volume of sales of not less than $500,000.

22. Defendants CATIC FINANCIAL and CATIC had the authority to hire and fire employees of CATIC TITLE and had authority to control the work schedules and conditions of employees of CATIC TITLE, including Plaintiff, through CATIC's managers, officers, and/or directors.

23. CATIC FINANCIAL and CATIC jointly issued the Employee Handbook that established the terms and conditions of Plaintiff's employment.

24. CATIC FINANCIAL and CATIC determined the rate and method of Plaintiff's pay.

25. For example, in July 2026, Plaintiff communicated with Defendant JESENIA PAGAN, CATIC's Human Resources Director regarding a formal job description for Plaintiff's position as Team Leader of Operations.

26. It was at this time that Ms. Pagan and the Corporate Defendants acknowledged that they unlawfully misclassified Plaintiff as an exempt employee.

27. Similarly, in August 2026, Plaintiff engaged in discussions with Ms. Pagan and Defendant CINDY NETSKA – CATIC's Vice President of Human Resources, concerning receiving Plaintiff's unpaid overtime compensation that she is owed for the

five prior years that she was denied same due to Defendants' unlawful misclassification of Plaintiff as an exempt employee.

28. The Corporate Defendants – specifically, CATIC's Human Resources Department and senior "leadership" at CATIC FINANCIAL, undertook an inadequate audit of Plaintiff's perceived work hours and pay in an attempt to calculate Plaintiff's unpaid overtime compensation over the prior six (6) years of Plaintiff's employment at CATIC TITLE.

29. Despite Plaintiff's request that CATIC's Human Resources Department provide her with her historical IT login information so that Plaintiff could make an independent assessment of the actual work hours that she worked each day and week and, therefore, the number of overtime hours worked, Ms. Netska advised Plaintiff that the Corporate Defendants would not produce that material.

30. At that time, Defendants also acknowledged to Plaintiff that other similarly situated employees were similarly misclassified.

31. Each of the Corporate Defendants maintain employment records for Plaintiff, including, but not limited to, job description, IT login information, pay records, performance evaluations, and personnel records concerning raises.

32. CATIC FINANCIAL and CATIC have centralized control over labor relations at CATIC TITLE.

33. The operations of the Corporate Defendants were interrelated, as CATIC FINANCIAL and CATIC – through its officers, managers, and/or directors, such as Ms. Pagan and Ms. Netska, were involved in the decisions relating to the employees of CATIC TITLE, and shared employees and records.

34. For example, in July 2026, realizing that they had unlawfully misclassified Plaintiff as an exempt employee, it was the senior management teams at CATIC FINANCIAL and CATIC that made the decision to: (i) begin paying Plaintiff on an hourly basis, (ii) reduce Plaintiff's approved work schedule to forty (40) hours or less, and (iii) require that any overtime hours be approved in advance by management.

35. The Corporate Defendants have common management and are under common financial control.

36. Defendants are Plaintiff's joint employers.

37. The work performed by Plaintiff was directly essential to the business operated by Defendants.

38. Defendants knowingly, willfully and/or recklessly misclassified Plaintiff as an exempt employee and, as such, failed to pay Plaintiff her lawfully earned overtime compensation in direct contravention of the FLSA and New York State Labor Law.

39. Plaintiff has satisfied all conditions precedent to the institution of this action, or such conditions have been waived.

**STATEMENT OF FACTS**

40. On or about September 21, 2020, Defendants hired Plaintiff to work as an Operations Assistant for CATIC TITLE in Tarrytown, New York, where Plaintiff's job duties included, but were not necessarily limited to:

- performing preliminary reconciliation of invoices, deposit checks, and accurately entering financial data into Defendants' computer system;
- managing post-closing escrow activities, including processing tax payments and issuing refunds;
- issue recording, refund, and commission checks;

- monitor and follow up on outstanding invoices and balances;
- disburse all funds associated with files and perform final reconciliation to ensure files are properly balanced and closed;
- generate and maintain financial and operational reports to support business needs and management decision-making;
- maintain accurate and detailed records of all financial transactions in compliance with internal controls and regulatory requirements; and
- assist management in overseeing in-office operations, including workflow coordination, task prioritization, and day-to-day support for team member.

41. Defendants failed to provide Plaintiff with a written wage notice identifying Plaintiff's regular hourly rate of pay and corresponding overtime rate of pay.

42. Upon hiring Plaintiff, Defendants willfully, intentionally, and/or recklessly misclassified Plaintiff as an employee exempt from receiving overtime compensation.

43. In or about April 2024, Defendants "promoted" Plaintiff to the position of New York Operations Team Lead, but essentially Plaintiff's job duties were the same as those performed as Operations Assistant.

44. Plaintiff continues to work for Defendants as New York Operations Team Lead at the present time.

45. Plaintiff worked over forty (40) hours per week.

46. From the beginning of Plaintiff's employment on or about September 21, 2020, and continuing through in or about May 2024, Plaintiff typically worked five (5) days per week and, although her work shift fluctuated slightly each day and week, it normally consisted of ten (10) hours per day Monday through Friday from 8:00 a.m. until 6:00 p.m.

47. However, there were many days where Plaintiff began her workday as early as 5:00 a.m. Thus, Plaintiff regularly worked between fifty (50) and sixty (60) hours per week.

48. Beginning in or about June 2024 and continuing through in or about August 2024, Plaintiff covered for a co-worker who was out on leave and typically worked twelve (12) to fifteen (15) hours per day, thereby working between sixty (60) and seventy-five (75) hours per week.

49. Beginning in or about September 2024 and continuing through on or about August 9, 2026, Plaintiff returned to her customary work schedule working between fifty (50) to sixty (60) hours per week.

50. Prior to August 9, 2026, Plaintiff was not required to punch a time clock or other time-recording device at the beginning and end of her daily work shift.

51. Prior to August 9, 2026, Plaintiff's workdays and hours could be electronically tracked through use of CATIC'S server and "Tracker Pro Server," which identified when Plaintiff logged in and out of her work computer.

52. Beginning on or about August 10, 2026, and continuing through the present time, Plaintiff works a shift from 8:00 a.m. until 4:30 p.m., with a thirty-minute meal break. Thus, Plaintiff is only authorized to work up to forty (40) hours per week.

53. From the beginning of Plaintiff's employment on or about September 21, 2020, and continuing through in or about December 2020, Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid at the rate of $100,000 per year straight time for all hours worked and worked fifty (50) to sixty (60) hours per week.

Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

54. Beginning in or about January 2021, and continuing through in or about December 2021, Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid at the rate of $100,217 per year straight time for all hours worked and worked fifty (50) to sixty (60) hours per week. Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

55. Beginning in or about January 2022, and continuing through in or about December 2022, Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid at the rate of $107,981 per year straight time for all hours worked and worked fifty (50) to sixty (60) hours per week. Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

56. Beginning in or about January 2023, and continuing through in or about December 2023, Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid at the rate of $118,468 per year straight time for all hours worked and worked fifty (50) to sixty (60) hours per week. Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

57. Beginning in or about January 2024, and continuing through in or about May 2024, Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid at the rate of $121,944 per year straight time for all hours worked and

worked fifty (50) to sixty (60) hours per week. Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

58. Beginning in or about June 2024, and continuing through in or about August 2024, Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid at the rate of $121,944 per year straight time for all hours worked and worked fifty sixty (60) to seventy-five (75) hours per week. Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

59. Beginning in or about September 2024, and continuing through in or about December 2024, Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid at the rate of $121,944 per year straight time for all hours worked and worked fifty (50) to sixty (60) hours per week. Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

60. Beginning in or about January 2025, and continuing through on or about August 9, 2026, Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid at the rate of $124,051 per year straight time for all hours worked and worked fifty (50) to sixty (60) hours per week. Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

61. Beginning on or about August 10, 2026, and continuing through the present time, Plaintiff is paid at the rate of $60.43 per hour and works up to forty (40)

hours per week. Thus, Plaintiff makes no claim for unpaid overtime compensation for this period.

62. At no time during her employment did Defendants provide Plaintiff with a correct and accurate weekly wage statement, which identified Plaintiff's hours worked.

63. By failing to provide Plaintiff with a wage notice and accurate weekly wage statements identifying her actual hours worked, Defendants prevented Plaintiff from determining and seeking payment for the precise number of unpaid hours and, therefore, prevented Plaintiff from promptly raising issues of underpayment with her employers. As a result, Plaintiff was harmed by being deprived of her income for longer than she would have been had she been able to raise her underpayment earlier.

64. As a result of Defendants' unlawful pay practices and the willful misclassification of Plaintiff as an exempt employee, Plaintiff was denied overtime compensation.

65. Defendants knowingly and willfully operate their business with a policy and practice of not paying Plaintiff and other similarly situated employees either the FLSA overtime rate (of time and one-half), or the New York State overtime rate (of time and one-half), in direct violation of the FLSA and New York Labor Law and the supporting federal and New York State Department of Labor Regulations.

66. At all relevant times, Defendants failed to maintain accurate and sufficient wage and hour records.

## COLLECTIVE ACTION ALLEGATIONS

67. Plaintiff brings this action individually and as class representative on behalf of herself and all other current and former non-exempt employees who have been

or were employed by Defendants between November 19, 2023, and the close of the opt-in period as ultimately set by the Court (the "Collective Action Period"), and who were compensated at rates less than time and one-half for all hours worked in excess of forty (40) hours per workweek (the "Collective Action Members").

68. The collective action class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts upon which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are more than twenty (20) Collective Action Members who worked for Defendants during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys, or knowledge of their claims. Therefore, Plaintiff submits that this matter should be certified as a collective action under the FLSA, 29 U.S.C. § 216(b).

69. Plaintiff will fairly and adequately protect the interests of the Collective Action Members and has retained counsel that is experienced and competent in the fields of employment law and class action litigation. Plaintiff has no interests that are contrary to or in conflict with those members of this collective action.

70. This action should be certified as a collective action because the prosecution of separate actions by individual members of the class would create a risk of either inconsistent or varying adjudications with respect to individual members of the class, or adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudication, or substantially impair or impede their ability to protect their interests.

71. A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as a collective action.

72. Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members. Among the common questions of law and fact common to Plaintiff and other Collective Action Members are:

a. Whether Defendants employed Plaintiff and the Collective Action Members within the meaning of the FLSA;

b. Whether Defendants failed to keep true and accurate wage and hour records for all hours worked by Plaintiff and the Collective Action Members;

c. What proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

d. Whether Defendants failed to pay Plaintiff and the Collective Action Members overtime compensation for all hours worked in excess of forty (40) hours per workweek, in violation of the FLSA and the regulations promulgated thereunder;

e. Whether Defendants' violations of the FLSA are willful as that terms is used within the context of the FLSA; and,

f. Whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated and statutory damages, interest, attorneys' fees, and costs and disbursements.

73. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

74. Plaintiff and others similarly situated have been substantially damaged by Defendants' wrongful conduct.

## STATEMENT OF CLAIM

### COUNT I
### [Violation of the Fair Labor Standards Act]

75. Plaintiff re-alleges and re-avers each and every allegation and statement contained in paragraphs "1" through "74" of this Complaint as if fully set forth herein.

76. At all relevant times, upon information and belief, Defendants were and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and the Collective Action Members are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

77. At all relevant times, Defendants employed Plaintiff and the Collective Action Members within the meaning of the FLSA.

78. At least within each of the three (3) most recent years relevant to the allegations herein, Defendant CATIC FINANCIAL had gross revenues in excess of $500,000.

79. At least within each of the three (3) most recent years relevant to the allegations herein, Defendant CATIC had gross revenues in excess of $500,000.

80. At least within each of the three (3) most recent years relevant to the allegations herein, Defendant CATIC TITLE had gross revenues in excess of $500,000.

81. At least within each of the three (3) most recent years relevant to the allegations herein, the Corporate Defendants jointlu had gross revenues in excess of $500,000.

82. Plaintiff and the Collective Action Members were entitled to be paid at the rate of time and one-half for all hours worked in excess of the maximum hours provided for in the FLSA.

83. Defendants failed to pay Plaintiff and the Collective Action Members overtime compensation in the lawful amount for all hours worked in excess of the maximum hours provided for in the FLSA.

84. At all relevant times, Defendants had and continue to have a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiff and the Collective Action Members for all hours worked in excess of forty (40) hours per work week, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

85. Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and the Collective Action Members at the statutory overtime rate of time and one-half for all hours worked in excess of forty (40) hours per week, when they knew or should have known such was due

and that non-payment of overtime compensation would financially injure Plaintiff and the Collective Action Members.

86. As a result of Defendants' failure to properly record, report, credit and/or compensate its employees, including Plaintiff and the Collective Action Members, Defendants have failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.A. §§ 201 *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

87. Defendants failed to properly disclose or apprise Plaintiff and the Collective Action Members of their rights under the FLSA.

88. As a direct and proximate result of Defendants' violation of the FLSA, Plaintiff and the Collective Action Members are entitled to liquidated damages pursuant to the FLSA.

89. Due to Defendants' reckless, willful and unlawful acts, Plaintiff and the Collective Action Members suffered damages in an amount not presently ascertainable of unpaid overtime compensation, an equal amount as liquidated damages, and prejudgment interest thereon.

90. Plaintiff and the Collective Action Members are entitled to an award of their reasonable attorneys' fees, costs and expenses, pursuant to 29 U.S.C. § 216(b).

**COUNT II**
**[Violation of the New York Labor Law]**

91. Plaintiff re-alleges and re-avers each and every allegation and statement contained in paragraphs "1" through "90" of this Complaint as if fully set forth herein.

92. Defendants employed Plaintiff within the meaning of New York Labor Law §§ 2 and 651.

93. Defendants knowingly and willfully violated Plaintiff's rights by failing to pay Plaintiff overtime compensation at the rate of time and one-half for each hour worked in excess of forty (40) hours in a workweek.

94. Defendants failed to properly disclose or apprise Plaintiff of her rights under the New York State Labor Law.

95. Defendants failed to furnish Plaintiff with a complete and accurate statement with every payment properly listing plaintiff's hours worked, in contravention of New York Labor Law § 195(3) and New York State Department of Labor Regulations § 142-2.7.

96. Defendants failed to keep true and accurate records of hours worked by each employee covered by an hourly minimum wage rate, the wages paid to all employees, and other similar information in contravention of New York Labor Law § 661.

97. Defendants failed to establish, maintain, and preserve for not less than six (6) years payroll records showing the hours worked, gross wages, deductions, and net wages for each employee, in contravention of the New York Labor Law § 194(4), and New York State Department of Labor Regulations § 142-2.6.

98. Neither at the time of her hiring, nor anytime thereafter, did Defendants notify Plaintiff in writing of her hourly rate of pay, corresponding overtime rate of pay, and regularly designated payday, in contravention of New York Labor Law § 195(1).

99. Due to Defendants' New York Labor Law violations, Plaintiff is entitled to recover from Defendants her unpaid overtime compensation, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law §§ 663(1), 198.

100. Plaintiff is also entitled to liquidated damages pursuant to New York Labor Law § 663(1), as well as statutory damages pursuant to the New York State Wage Theft Prevention Act.

## PRAYER FOR RELEIF

**WHEREFORE**, Plaintiff AMADA SPROCK, on behalf of herself and all similarly situated Collective Action Members, respectfully requests that this Court grant the following relief:

(a) An award of unpaid overtime compensation due under the FLSA and New York Labor Law;

(b) An award of liquidated damages as a result of Defendants' failure to pay overtime compensation pursuant to 29 U.S.C. § 216;

(c) An award of liquidated damages as a result of Defendants' failure to pay overtime compensation pursuant to the New York Labor Law and the New York State Wage Theft Prevention Act;

(d) An award of statutory damages for Defendants' failure to provide wage notices and accurate wage statements pursuant to the New York Labor Law and the New York State Wage Theft Prevention Act;

(e) An award of prejudgment and post-judgment interest;

(f) An award of costs and expenses associated with this action, together with reasonable attorneys' and expert fees; and

(g) Such other and further relief as this Court determines to be just and proper.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues.

Dated: New York, New York
November 19, 2026

Respectfully submitted,

CILENTI & COOPER, PLLC
*Attorneys for Plaintiff*
60 East 42nd Street – 40th Floor
New York, NY 10165
T. (212) 209-3933
F. (212) 209-7102

By: */s/ Justin Cilenti*
Giustino (Justin) Cilenti (GC2321)

**CONSENT TO SUE UNDER**
**FAIR LABOR STANDARDS ACT**

I, Amada Sprock am an individual currently or formerly employed by Catic Title Insurance Co. and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages.

Dated: New York, New York
October 8, 2026

Amada Sprock

______________________
Amada Sprock